# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.  25-mj-8268-RMM |
| Jeffrey Josue Iglesias | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

FILED BY ____SP____ D.C.
May 16, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 15, 2025__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) and (b)(1)(C) | Possession with Intent to Distribute a controlled substance |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Jose Paniagua, DEA Task Force Officer
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: 05/16/2025

_____
Judge's signature

City and state: West Palm Beach, FL     Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jose Paniagua, being duly sworn do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a deputized Task Force Officer ("TFO") with the United States Drug Enforcement Administration ("DEA"). As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516 and Title 21, United States Code. As part of my duties and responsibilities, I have investigated violations of federal laws, including those pertaining to firearms, narcotics, and fraud. I have served as a TFO with DEA since May 2024.

2. As a Task Force Officer of the United States Department of Justice, I am authorized to conduct criminal investigations of violations of Title 21 of the United States Code. Your affiant is a sworn police officer for the City of West Palm Beach Police Department, and has served in that capacity since 2017. Your affiant is currently assigned to the West Palm Beach Police Department Special Investigation Division Organized Crime Section and from there to the DEA Task Force. Your affiant has successfully completed the Criminal Justice Standards and Training Police Academy and is certified by the Criminal Justice Standards and Training Commission as a Law Enforcement Officer.

3. I have received extensive training in conducting narcotics investigations and in identifying the means and methods used by narcotic users, distributors, and traffickers. I have conducted or participated in numerous investigations of this nature. Much of this training and experience has been directed at the detection, investigation, seizure and prosecution of individuals involved in the manufacture, possession and distribution of controlled substances. Through my training, education

and experience, which has included debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, acting in an undercover capacity, conducting searches of locations where drugs and money have been found, and conducting surveillance on individuals engaged in drug trafficking I have learned the various methods, packaging materials, and actions that drug traffickers utilize to conduct their illegal business and in their efforts to thwart law enforcement. I have acted as an undercover agent and conducted numerous meetings and controlled drug transactions myself, on behalf of law enforcement.

4. This affidavit is made in support of a Criminal Complaint and Arrest Warrant charging **Jeffrey Josue IGLESIAS, (**hereinafter "IGLESIAS") with possession with the intent to distribute a controlled substance (cocaine), in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. The limited purpose of this affidavit is to establish probable cause for the offenses described above. Accordingly, this affidavit does not set forth every fact that is known to me, or other law enforcement officers.

## **PROBABLE CAUSE**

6. On May 12, 2025, at approximately 11:04am, the West Palm Beach Police Department (WPBPD) received a 911 call from the on-duty manager at the Sea Grape Motel Apartments located at 2618 Broadway in West Palm Beach, Florida. The caller advised that a male occupant, hereafter referred as M.H, appeared to be deceased in in Room #25 of the motel. Responding WPBPD patrol units, as well as West Palm Beach Fire Rescue, located M.H who was pronounced deceased by on-scene paramedics at 11:14am.

2

7. An initial, brief search by patrol officers of Room #25 revealed an off-white, rock-like substance (suspected crack cocaine) in the drawer of an end-table along with a charred glass pipe (suspected crack pipe). The suspected crack cocaine field-tested positive for cocaine (Scott Reagent test kit).

8. When located, M.H.'s body was crumpled and contorted in an unusual physical position, similar to a "child's pose" yoga pose, having apparently suffered his medical crisis while seated in a chair and fallen/tipped forward in the seat. There did not appear to be any obvious signs of physical trauma or injury to M.H.

9. Dr. Alexander Blank, a Medical Examiner in Miami-Dade County (FL) who is a Locum Tenes in Palm Beach County, conducted a physical autopsy of M.H. at the Palm Beach County ME Office. Dr. Bank's notes (pending the ME's eventual full report) indicates the opinion that M.H.'s death was likely the result of an overdose – pending the results of toxicology analysis.

10. WPBPD Violent Crime Detectives spoke to M.H.'s parents who indicated that M.H. has struggled with addiction to illicit narcotics for many years and have known M.H. to abuse opioids, but did not know if M.H. had ever previously used, or abused, crack cocaine.

11. WPBPD Violent Crime Detectives recovered and seized a black Motorola cellphone from the bed inside of Room #25. This cellphone was believed to belong to M.H. The Android-device was powered on and unlocked. Members of the West Palm Beach Police Department's Digital Forensics Unit (DFU) were able to complete an extraction of the cellphone.

12. WPBPD Violent Crimes Detectives were able to conduct an initial review of the data extracted from M.H.'s cellphone. Detectives located a text message conversation between M.H. and phone number (***) ***-4192.

13. A review of the conversation between M.H. and the individual utilizing the (***) ***-4192, later identified as IGLESIAS, was consistent with a drug purchaser (M.H.) requesting to purchase, or otherwise obtain, illicit narcotics from a distributor. In this case, it appeared M.H. was requesting specific quantities/values of narcotics.

14. A search of local police reports indicated that telephone number (***) ***-4192 has been utilized by Jeffrey IGLESIAS during contact with the Palm Beach County Sheriff's Office six (6) times between February 6, 2025 and April 12, 2025; IGLESIAS also provided telephone number (***) ***-4192 to WPBPD during a traffic stop on September 24, 2024.

15. According to records obtained by the DEA through an administrative subpoena, phone number (***) ***-4192 is associated to a cellular telephone device with service provided by T-Mobile, subscribed to Jeffrey IGLESIAS at 163 Park St in West Palm Beach, Florida. Service began on November 9, 2024 and is current.

16. In-depth review of the text messages between M.H and IGLESIAS show that they have been in communication via text message since at least January 6, 2025. The following is a summary of the text message exchange between the M.H and the IGLESIAS since that time:

<u>February 5, 2025</u>

(11:55) IGLESIAS: Yo

(11:55) IGLESIAS: I'm str8 now

(11:55) IGLESIAS: Gota ll u need

(14:39) M.H.: Yo

(14:39) IGLESIAS: Yo

(14:40) M.H.: 50?

(14:40) IGLESIAS: Yah

4

(14:41) M.H.: I gotta go to ATM at Queens Lodge

(14:42) IGLESIAS: Ok give me no more than 20 min ill take it to u

(14:55) IGLESIAS: [MMS Message, screenshot of navigation directions leading into the City of West Palm Beach]

(15:08) IGLESIAS: 10 min

…

(18:09) M.H.: 60?

(19:01) IGLESIAS: Yes

(19:16) IGLESIAS: Im here

(19:16) IGLESIAS: At your room

(19:16) IGLESIAS: Where you at

(21:17) M.H.: My bad I was sick ASF

(21:21) IGLESIAS: Ok u good

(21:21) TARGET TELEPHONE: Sick how

(21:22) IGLESIAS: I got the other I told u

(21:22) IGLESIAS: Call me


February 25, 2025

(19:03) M.H.: Do a 40 bro?

(19:07) IGLESIAS: Bro if you give me an hour way

March 11, 2025

(18:20) M.H.: 3 instead

(18:31) IGLESIAS: 60

(18:32) M.H.: U otw?

(18:34) IGLESIAS: Kyes [and MMS voice memo message, of a male stating he is "about 10… 12 minutes… I'm at Congress and 45th already"]

17. Additionally, phone records show that on May 11, 2025 (the day prior to when M.H. was found deceased) M.H. and the IGLESIAS engaged in conversation. At 8:50am, M.H. sent an outbound text message to IGLESIAS: "Yo", but received no response. M.H. then placed an outbound phone call to IGLESIAS at 9:02am, which was answered and lasted two (2) minutes and 17 seconds. M.H. made an additional outbound call to IGLESIAS at 9:52am, which was answered and lasted 25 seconds. IGLESIAS then called M.H. at 10:15am, which M.H. answered and lasted 50 seconds. IGLESIAS again called M.H. at 10:38am, which M.H. answered and lasted 22 seconds.

18. The final phone call placed by IGLESIAS, and answered by M.H. at 10:38am, represents the last time M.H answered or placed any phone calls. M.H. did not appear to send any outbound messages after this final call with IGLESIAS, either. From WPBDO Violent Crimes Detective's review of M.H.'s phone, it appears that M.H. stopped interacting with the device at around 12:10pm on May 11, 2025.

19. During the timeframe of M.H. and IGLESIAS' text and voice conversations on May 11, 2025 – M.H's phone GPS did not register any travel away from the Sea Grape Motel Apartments.

20. Florida's Driver and Vehicle Information Database (DAVID) records show IGLESIAS as the registered owner of a 2004 white Toyota Corolla bearing Florida Registration: RKWL33. License Plate Readers (LPRs) captured this vehicle entering the City of West Palm Beach eastbound on Okeechobee Blvd from Interstate 95 at on May 11, 2025, at 9:52am, followed by

6

eastbound on 15th St from N Tamarind Ave at 10:14am, and then northbound on Division Ave from Grant St at 10:15am. IGLESIAS' vehicle was next captured later that day northbound on Broadway from 44th St at 3:31pm. The travel pattern outlined by the LPRs are consistent with IGLESIAS' vehicle being in the area of the Sea Grape Motel Apartments at the time that M.H. and IGLESIAS were communicating on May 11, the day prior to M.H. being located deceased.

21. On May 15, 2025, WPBPD and DEA conducted a joint operation to communicate with IGLESIAS. At approximately 4:00pm, agents and officers from WPBPD and DEA located IGLESIAS at 6283 Shawnee Lane in Atlantis, Florida. Agents and officers observed several vehicles parked in front of the residence including IGLESIAS' 2004 white Toyota Corolla bearing Florida Registration: RKWL33.

22. At approximately 4:08pm, a WPBPD Sergeant, acting in an undercover capacity, utilized M.H.'s cellphone to engage in a text message conversation with IGLESIAS:

(16:08) Undercover: Yo Do a 60 bro

(17:06) Undercover : Yo

(17:24) IGLESIAS: Where you at

(17:27) Undercover: My apt at motel

(18:04) IGLESIAS: Which one bro

(18:05) IGLESIAS: Ill come thru bro

(18:05) Undercover: Seagrape Broadway

(18:05) Undercover: How long

(18:14) IGLESIAS: Can you do 80 ill come right now

(18:16) Undercover: Yea imma walk to ATM

(18:18) IGLESIAS: Ill be there by 7

(18:21) Undercover: Text when here. I'll come out

(18:36) IGLESIAS: Ok

(19:10) Incoming Call from IGLESIAS to Undercover – Not Answered

(19:11) IGLESIAS: Yo

(19:11) Undercover: Tried to answer. It won't answer

(19:13) IGLESIAS: 1 min

(19:14) IGLESIAS: Como to 25 st

(19:14) IGLESIAS: By the pizza place

(19:15) Undercover: Walking out

23. During the above conversation, agents and officers continued to maintain surveillance of IGLESIAS. At approximately 6:40pm, agents and officers observed IGLESIAS exit the residence with a bag and enter the Toyota Corolla before pulling away from the residence. Agents and officers briefly lost sight of IGLESIAS before re-acquiring him a brief distance from the house, traveling eastbound on Lantana Road, towards Interstate 95.

24. Agents and officers were able to maintain constant surveillance of IGLESIAS as he traveled towards the Sea Grape Motel Apartments. At approximately 7:15pm, IGLESIAS was observed pulling into the gas station located at the intersection of 25th St and Broadway, which is across the street from a pizza restaurant, and one block away from the Sea Grape Motel Apartments. This was at the same time that IGLESIAS texted the Undercover to come to 25th St.

25. At soon at IGLESIAS' white Toyota Corolla came to a stop and parked at the gas station, members of the WPBPD and DEA took IGLESIAS and a female passenger into custody.

26. As IGLESIAS exited the driver's seat of the Toyota Corolla a green, cross body bag fell out of the driver's seat floorboard and onto the ground outside of the vehicle. Upon closer

8

inspection, agents and officers also immediately observed a small clear bag containing four (4) off-white, rock-like substances (suspected crack cocaine) in plain view, sitting on the driver's floorboard area. The suspected crack cocaine was later tested with the TruNarc and which confirmed the substance to be cocaine base and found to have a weight of 30 grams.

27. Also, in plain view, agents and officers observed a clear glass vial in the driver's door pocket which contained several off-white, rock-like substances (suspected crack cocaine). The suspected crack cocaine was later tested with the TruNarc and which confirmed the substance to be cocaine base and found to have a weight of 50.5 grams.

28. As previously described, when examining the room which M.H.'s was found deceased in, WPBPD Detectives located what appeared to be crack cocaine on the nightstand near M.H.'s body. It should be noted that the crack cocaine located in the motel room was similar and consistent in shape, size, color, an appearance of the crack cocaine found in IGLESIAS' vehicle at the time of his arrest.

29. Further examination of the green, cross body bag, located several items of drug paraphernalia, specially that utilized to smoke crack cocaine and a cellphone. Also, in the bag was NARCAN, also known as naloxone, is a medication used to reverse opioid overdoses. Additionally, in the bag there were 2 small electronic scales. On one of the scales, there was a small baggie that contained several off-white, rock like substance (suspected crack cocaine). The suspected crack cocaine was later tested with the TruNarc and which confirmed the substance to be cocaine base and found to have a weight of 29.5 grams.

30. Agents and officers observed two (2) cellphones in plain view; one on the driver's seat and one in the center console. A phone call was placed by the undercover to IGLESIAS' cellphone and the cellphone that was in the center console rang. Agents and officers observed the background of

the phone to be IGLESIAS and a female. It was later confirmed that this was IGLESIAS phone and the phone on the driver's seat was the female passengers. It was also found that the cellphone located in the green, cross body bag was IGLESIAS' second cellphone. IGLESIAS would later provide consent to search both of his cellphones.

31. After the arrest, IGLESIAS was transported to the West Palm Beach Police Department for further questioning. IGLESIAS was read and shown a copy of his Miranda Rights. IGLESIAS acknowledged that he understood his rights and was willing to speak to law enforcement.

32. During the interview, IGLESIAS acknowledged that he believed that he was speaking with M.H. and that he intended to sell the crack cocaine to M.H. IGLESIAS also advised that the crack cocaine he had in the plastic vile located in the vehicle was intended on being sold to M.H.

33. IGLESIAS also acknowledged that he previously sold crack cocaine to M.H. on the day they last spoke on the phone. Phone records indicate that the last time that IGLESIAS and M.H. communicated was on May 11, 2025, the day prior to M.H. being located deceased. IGLESIAS stated that he purchases a half an ounce quantity of crack cocaine at a time from his source of supply. IGLESIAS admitted that he sells the crack cocaine and then personally smokes whatever he does not sell. IGLESIAS explained that the crack cocaine that he sold M.H. on May 11, 2025, was from the same half an ounce that he currently had in his possession.

34. During the interview IGLESIAS mentioned that he knows that crack cocaine and marijuana are being laced with fentanyl. IGLESIAS stated that his supplier does not deal with fentanyl and does not believe the crack cocaine was laced with fentanyl that he sells. IGLESIAS confirmed that he has smoked the crack cocaine from the same batch he sold to M.H.

**CONCLUSION**

35. Based on the facts and information set forth in this affidavit, your affiant respectfully submits that there is probable cause to believe IGLESIAS committed the criminal offense of possession of a controlled substance (crack cocaine), in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(c).

_____
Jose Paniagua
Task Force Officer
Drug Enforcement Administration

Sworn and Attested to me by Applicant by Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d) and 4.1 this 16 day of May 2025.

_____
HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  Jeffrey Josue Iglesias

**Case No**:  25-mj-8268-RMM

Count #:

Possession with Intent to Distribute a Controlled Substance – Cocaine

21 U.S.C. §§ 841(a)(1) and (b)(1)(C)
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Minimum 3 years to life term
* **Max. Fine:** $1,000,000
* **Special Assessment:** $100.00

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.